No. 557

First Circuit

## HIGGINS LUMBER & EXPORT CO., INC., v. DRACKETT

(December 30, 1929. Opinion and Decree.)

C. A. Blanchard, of Morgan City, attorney for plaintiff, appellee.

Borah, Himel & Bloch, of Franklin, attorneys for defendant, appellant.

MOUTON, J. Plaintiff sues on an open account claiming that defendant owes it a balance of $170 "for services rendered, labor and material during the year 1928."

The defendant, in his answer, avers that plaintiff, in 1928, had rendered services, labor, and material to defendant on open account, but denied that any balance was due thereon, claiming he had paid the account

in full on the 20th day of July, 1928. Further answering, defendant denies that the $170 were for the services, labor, and materials alleged, but that the claim was based on the alleged "yard rent on the ferry boat Cecil N. Bean and two barges from 5/22/28 to 6/25/28 at five dollars ($5.00) per day," which item appears on plaintiff's account annexed to the petition. The defendant then alleges that the charges carried in this item are entirely disconnected with the claim for the alleged services rendered, labor, and material for the year 1928; and, in connection with that averment, defendant alleges that the charges claimed by plaintiff for yard rent, etc., at $5 per day, were for mooring the ferry boat and the two barges of defendant in the Industrial Canal, a public stream, were therefore unwarranted and illegal, because, under the law, the board of commissioners of the port of New Orleans, alone, has the constitutional right of imposing rates and tariffs in such matters. Further answering, defendant alleges that: "In addition, it was specially and distinctly understood between plaintiff and defendant that there would be no charge by plaintiff against defendant for the mooring of said boat and barges in said canal."

The proof shows that defendant originally entered into a contract with plaintiff company for a repairing of the steamboat, Cecil N. Bean, referred to in the item charging for yard rent carried on the account to which we have heretofore referred. This contract to repair the boat was completed, the account was rendered to defendant, and was paid with the exception of $170, for which this suit was brought.

It is shown that after the completion of the contract the steamboat and the two barges were tied to the pilings of plaintiff company, and occupied from May 22, 1928, to June 25, 1928, a certain frontage of the space or portion of land on the bank of the canal which had been leased to plaintiffs by the commissioners of the port of New Orleans. The defendant, during the time intervening between the dates above stated, was engaged in repairing, through his employees, the said vessels. Machinery of the plaintiff was used, also the pilings, piers, or such appurtenances as were necessary to carry on the work to make the repairs needed on the steamboat and barges. It is for the use of these facilities that the rental charge of $5 a day is made.

It is contended by defendant that the claim of the plaintiff is illegal; also, that plaintiff had distinctly and specially agreed that no charges would be made by him for the mooring of the boat and barges of defendant in the canal.

We shall refer to portions of section 7 of article 2 and section 1 of article 3 of the lease from the board of commissioners of the port of New Orleans to plaintiff which have some bearing on the contention of defendant that the charges were illegal and unwarranted.

Section 7 of article 2 prohibits the assignment or such letting of the leased premises by plaintiff company, or of any portion thereof, without the written consent of the board, the lessor.

The understanding or agreement between plaintiff company and defendant simply allowed the use of the company's pilings, piers, or facilities to defendant to carry out the work necessary for the repairs he was making on the steamboat and barges. There was certainly no assignment or subletting of the premises, there being no fact that could possibly sustain such a conten-

tion. There was no price fixed for the use of the facilities plaintiff had permitted to defendant, and therefore no lease, if such a contract had been intended, as a price in money, commodities, or fruits should be certain to constitute a lease. C. C. arts. 2669, 2671. The agreement entered into without the consent of the board of commissioners was therefore not in violation of the prohibition contained in section 7 of article 2 of the lease.

It is provided in section 1 of article 3 of the lease that vessels or other watercrafts entering the canal on the exclusive business of the lessee shall be exempt from canal and lock fees, except when they pass completely through the canal from the lake to the river, or from the river to the lake. The foregoing portion, section 1 of article 3, has no essential application to the issue presented. The latter part of the section provides as follows, and this applies to the contested points between the litigants, viz:

"And provided further that vessels or other watercrafts using privately owned wharves or facilities within the canal on business either in whole or in part of any other than the owner or authorized lessee of said wharf or other facilities used, shall pay to the lessor the regular charges of the lessor."

The lease provides generally for the imposition of tolls, fees, tariffs, or canal charges on all vessels or watercrafts using the canal, with the exceptions made in favor of lessees. It will be observed that, in the excerpt from section 1 of article 3 of the lease, above reproduced, that these charges must be paid to the board for vessels or other watercrafts "using privately owned wharves or facilities within the canal on business either in whole or in part of any other than the owner or authorized

lessee of said wharf or other facilities used."

Obviously, under the terms of the lease, when these privately owned wharves or facilities are used in the business of the lessee, the tolls, tariffs, or canal charges are not to be paid to the board.

In the instant case it is shown that the steamboat had been repaired by plaintiff company under a contract with defendant which had been paid, with the exception of the $170 sued for herein. It is evident that these repairs were made in the regular business of the company; the use of the facilities allowed by plaintiff to defendant for the repair of the steamboat and two barges was likewise connected with the business of the company. The defendant therefore owed no charges to the board for the benefits he had received from the use of these facilities. The use defendant made of these facilities was in the business of plaintiff company under the agreement or understanding it had with defendant. The charges made by plaintiff were not for tolls, fees, tariffs, or canal charges, as was explained by A. J. Higgins, manager of plaintiff company. They were not illegal or unwarranted.

In addition to the defense of their illegality, defendant contends that, by virtue of a special and distinct understanding with plaintiff, he was not to be charged for the mooring of his boat and barges. If the charges were illegal or unwarranted, as contended for by defendant, it seems a little singular that he should have had a special understanding with plaintiff company that plaintiff would make no claim for them. Be that as it may, it was in-

cumbent upon defendant to prove that he had had such an understanding with plaintiff. The proof is that, when the original contract was entered into for the contemplated repairs on the steamboat, plaintiff company, through Higgins, its representative, said that no charges would be made while it was undergoing the needed repairs. This promise not to charge had reference to the steamboat while it was undergoing repairs, and could not possibly have referred to the steamboat and barges which were tied near plaintiff's plant, after the contract for the repair of the steamboat had been completed under the original contract. We are unable to find in the record that any such promise was made by plaintiff for the use of its premises, during the two months' period, when, after the completion of the original contract defendant undertook individually to make the repairs on the barges and the steamboat.

Even if the testimony of defendant and of his son, Ernest, can be understood as an attempt to show that such a promise was made when the barges and steamboat were under repairs, we do not find that defendant has sustained the burden of proof required to maintain that contention. We find it unnecessary to comment on the evidence of Marzoni, which is so illusive, noncommittal, and negative that it adds no probative force to the case one way or the other, and is entirely valueless.

The evidence shows that the claim of plaintiff is not for canal wharfage, tolls, or tariff, but for the use of the pilings, piers, and facilities of plaintiff's plant, and for expenses which were incurred to move its equipments around defendant's boat and barges. It is shown that the services rendered are worth the amount claimed, for which we find that judgment was correctly rendered.